IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| FORTUNE DEVELOPMENT, L.P. | : | CIVIL ACTION |
|---|---|---|
| v. | : | No. 12-2327 |
| BERN TOWNSHIP, et al. | : | |

**MEMORANDUM**

**Juan R. Sánchez, J.**                                                                                                 **March 13, 2013**

Plaintiff Fortune Development, L.P. (Fortune) seeks to develop a "55+ Age Rated residential development" on a 58-acre property it owns in Bern Township, Pennsylvania, but has been unable to secure the wastewater treatment service it needs to do so, allegedly due to wrongful and obstructive conduct by various local government entities. Fortune brings claims pursuant to 42 U.S.C. § 1983 against three such entities—Bern Township, the Bern Township Municipal Authority (BTMA), and the Leesport Borough Authority (LBA)—alleging violations of its procedural and substantive due process rights. Fortune also brings a state-law claim for intentional interference with contractual relations against five individually named Bern Township Supervisors, the Schuylkill River Greenway Association (the Greenway Association), and the Vice President of the Greenway Association's Board, and brings a civil conspiracy claim against all of the individual Defendants.

In four separate motions to dismiss, all Defendants ask this Court to dismiss the claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6). Because Fortune has failed to state a procedural or substantive due process claim against any of the local government entities, Fortune's federal claims (Counts One and Three) will be dismissed. Fortune's remaining state-

law claims (Counts Four and Five) will be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c).[1]

**FACTS**[2]

Fortune owns a 58-acre tract of land in Bern Township, Pennsylvania (the Property), adjacent to and immediately south of the Leesport Borough line and west of the Schuylkill River. The Property is separated from the River by a strip of land owned by the Greenway Association, a nonprofit organization.

In August 2005, Fortune submitted to Bern Township a plan to develop Water's Edge, a "55+ Age Rated residential development," on the Property. Compl. ¶¶ 18-19. In May 2007, the Bern Township Board of Supervisors resolved to reject the plan; however, because the Township did not give the legally required notice of the prospective rejection, the preliminary plan was deemed approved. Nevertheless, development has been stalled because Fortune has been unable to secure wastewater treatment service for Water's Edge.[3]

Neither Bern Township nor BTMA owns or operates a public wastewater treatment facility. Rather, the closest public facility to Water's Edge is owned by LBA. Beginning in 2006, Fortune contacted Bern Township and BTMA about obtaining sewer and wastewater treatment service for Water's Edge from the Township's reserved capacity at the LBA plant;

---

[1] Fortune voluntarily dismissed Count Two of the Complaint, a procedural due process claim against Leesport Borough (which is no longer a Defendant), in July 2012. *See* ECF No. 39.

[2] The following facts are drawn from the allegations of Fortune's Complaint, which this Court must accept as true in evaluating the instant motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

[3] The Complaint also alleges development of Water's Edge was stalled while Fortune attempted to obtain water service for the project. Because Fortune's allegations regarding the difficulties it experienced in obtaining water service pertain only to Leesport Borough, which is no longer a Defendant in this action, those allegations are not discussed herein.

however, these Defendants denied Fortune's request on the basis that the LBA plant did not have sufficient capacity to serve Water's Edge. Fortune then applied to Bern Township for a private, on-site wastewater treatment plant, but the Township denied the application, at least in part because Fortune did not have access to the Schuylkill River for discharge of treated wastewater.

Following these unsuccessful attempts to obtain sewer and wastewater treatment services, in 2008 or 2009, Fortune hired Dr. Hugh Archer, an expert on wastewater treatment plant capacity, to evaluate whether the LBA plant had the capacity to serve Water's Edge. In 2009, Dr. Archer determined the LBA plant could make an additional 50,000 gallons per day of treatment capacity available (an amount sufficient to serve Water's Edge) if LBA were to submit an application to the Pennsylvania Department of Environmental Protection (DEP) to "re-rate" the LBA plant's capacity. Later in 2009, LBA agreed to undertake a capacity analysis of its treatment plant and to submit a re-rating application if additional capacity was found.

On October 30, 2009, Fortune's lawyer offered to assume all of LBA's costs relating to any re-rating, and in December 2009, Michael Butto, one of the partners of Fortune, appeared at an LBA meeting with a $23,000 check to fund LBA's capacity analysis. During the meeting, however, LBA told Butto that, per the request of Bern Township and/or BTMA, any request for sewer and wastewater treatment capacity for Water's Edge would have to be made through BTMA.

Butto left the LBA meeting and went directly to a BTMA meeting the same night, at which BTMA advised Butto an extra 50,000 gallons per day was not sufficient for Water's Edge. BTMA also told Butto that another developer, Forino Co., L.P. (Forino), wanted the same additional capacity Fortune was seeking. (Forino was present at the BTMA meeting.) Fortune and Forino thereafter agreed to split the cost of the LBA capacity analysis, with each developer

reserving its right to claim any found capacity for itself. Although LBA's engineer ultimately confirmed Dr. Archer's conclusion that the LBA plant had an excess capacity of 50,000 gallons per day, BTMA did not authorize either Fortune or Forino to use the excess capacity, asserting it needed another $20,000 from each developer for equipment and/or engineering work.[4]

On November 15, 2011, Fortune's lawyer wrote to LBA's lawyer, seeking a determination as to whether LBA would allocate any of the excess capacity to Fortune without Fortune's payment of more money. LBA has never responded to the letter. Fortune believes unspecified Bern Township and BTMA officials who were opposed to Water's Edge persuaded LBA not to allow Fortune adequate wastewater treatment capacity.

As an alternative to obtaining wastewater treatment services from LBA, Fortune has also sought such services from the Reading Area Water Authority (RAWA), which is located on the opposite side of the Schuylkill River from Water's Edge. As noted, the Property is separated from the River by a strip of land owned by the Greenway Association. There is an existing 30-foot-wide easement over the Association's land, and a pipe running through the easement carries stormwater from a development adjacent to Water's Edge to the Schuylkill River.

In September 2008, Fortune entered into an agreement with RAWA (the Easement Agreement) under which RAWA agreed to exercise its eminent domain power to condemn an easement for water and utility purposes over the Greenway Association's land, which would enable RAWA to connect water and sewer services from Water's Edge to RAWA's facilities. In February 2009, RAWA's Board of Directors passed a resolution authorizing condemnation of

---

[4] The Complaint does not specify when LBA's engineer confirmed there was additional capacity in the LBA plant or when BTMA requested additional funds from Fortune and Forino. At oral argument, however, Fortune's counsel represented LBA's engineer completed his analysis in June 2010, and BTMA requested additional funds sometime thereafter.

the contemplated easement. On May 4, 2010, RAWA filed a Declaration of Taking Complaint in the Berks County Court of Common Pleas to condemn the easement.

Before the Complaint was filed, in response to questions from Bern Township regarding Fortune's proposed private, on-site wastewater treatment plant (which the Township had rejected), Fortune informed the Township it expected to have access to the Schuylkill River for post-treatment wastewater discharge through the easement contemplated by the Easement Agreement. Bern Township and the Greenway Association thereafter entered into an agreement of sale (the Future Sale Agreement) purporting to convey the Association's land to Bern Township for $1, allegedly in an effort to prevent the condemnation. The Bern Township Supervisors approved the Future Sale Agreement at a meeting on May 1, 2010, a Saturday. Although the Agreement contemplates closing within five years of execution, closing has not occurred to date.

The Greenway Association filed preliminary objections to RAWA's Declaration of Taking, and Bern Township filed a petition to intervene, also objecting to the condemnation.[5] The Berks County Court of Common Pleas sustained the Association's preliminary objections, finding the proposed condemnation was improper because RAWA was taking private property to serve a private enterprise (Fortune) and the size of the easement was not reasonably related to RAWA's public purpose to provide water. *See Reading Area Water Auth. v. Schuylkill River Greenway Ass'n*, 50 A.3d 255, 257 (Pa. Commw. Ct. 2012). RAWA appealed, and on July 30, 2012, the Commonwealth Court reversed, holding RAWA was "authorized by law to use its

---

[5] Although Fortune originally believed Bern Township had objected to the condemnation on the basis that the easement could not be condemned because the Township was the equitable owner of the land in question and condemnation of municipally owned land is not permitted under Pennsylvania law, Fortune has since conceded the Township did not assert RAWA's inability to take municipally owned land as a preliminary objection.

5

power of eminent domain to condemn land for the provision of water and sewer facilities" and that the "incidental benefit to Fortune [did] not strip the project of its public purpose . . . [of] providing water, sewer and storm water management to citizens living in RAWA's service area." *Id.* at 258-60. The Greenway Association and Bern Township's petition for allowance of appeal, filed on October 17, 2012, remains pending in the Pennsylvania Supreme Court.

On April 30, 2012, Fortune filed the Complaint in this action. Fortune brings § 1983 claims against Bern Township, BTMA, and LBA, alleging violations of its procedural and substantive due process rights. Fortune also brings a state-law claim for intentional interference with contractual relations against five individually named Bern Township Supervisors (Lucille M. Brady, Boyd Wagner III, Robert Eveland, Irene Reed, and Jeffrey A. Thompson), the Greenway Association, and R. Dean Foster, the Vice President of the Greenway Association's Board. Finally, Fortune brings a state-law civil conspiracy claim against all of the individual Defendants. All Defendants have moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

**DISCUSSION**

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a Rule 12(b)(6) motion, a district court first must separate the legal and factual elements of the plaintiff's claims. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Id.* at 210-11.

6

The court must then "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679).

To state a § 1983 claim for deprivation of procedural due process rights, a plaintiff must allege "(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006) (citation omitted). "[A] state provides constitutionally adequate procedural due process when it provides reasonable remedies to rectify a legal error by a local administrative body." *DeBlasio v. Zoning Bd. of Adjustment*, 53 F.3d 592, 597 (3d Cir. 1995), *abrogated on other grounds by United Artists Theatre Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392 (3d Cir. 2003) (citation omitted). Thus, for example, where a state provides a "full judicial mechanism" for challenging an administrative decision, the state provides adequate procedural due process "whether or not the plaintiff avails him or herself of the provided appeal mechanism." *Id.* (quotation omitted).

For its procedural due process claim, Fortune alleges Bern Township, BTMA, and LBA deprived it of its "legitimate claim of entitlement to wastewater treatment services from . . . LBA" without due process of law. Compl. ¶¶ 78-79. Defendants argue this claim should be dismissed because the Pennsylvania Sewage Facilities Act, 35 Pa. Stat. Ann. §§ 750.1–750.20, also known as "Act 537," provides an adequate process by which a real estate developer may seek review of a municipality's decisions regarding the availability of sewage collection, treatment, and disposal services.

7

Under Act 537, each municipality must submit to DEP[6] "an officially adopted plan for sewage services for areas within its jurisdiction" and must revise the plan periodically, as required by the applicable regulations. 35 Pa. Stat. Ann. § 750.5(a). Such plans must "provide for the resolution of existing sewage disposal problems, provide for the future sewage disposal needs of new land development and provide for the future sewage disposal needs of the municipality." 25 Pa. Code § 71.11. The Act also affords property owners a means of obtaining changes to a municipality's official plan. Under the Act, a resident or legal or equitable property owner in a municipality may make a written demand on the municipality to revise (or implement) its official plan. If the municipality issues a written refusal or fails to respond to the demand within 60 days, the resident or legal or equitable property owner "may file a private request with [DEP] requesting that [DEP] order the municipality to revise its official plan if the resident or property owner can show that the official plan is not being implemented or is inadequate to meet the resident's or property owner's sewage disposal needs." 35 Pa. Stat. Ann. § 750.5(b).[7] "DEP's decision is appealable to the Environmental Hearing Board (EHB) for an evidentiary hearing and issuance of findings of fact and conclusions of law." *McGrath Constr., Inc. v. Upper Saucon Twp. Bd. of Supervisors*, 952 A.2d 718, 721 n.1, 728 (Pa. Commw. Ct.

---

[6] Although the statute refers to the Department of Environmental Resources, in 1995, the Department's name was changed to the Department of Environmental Protection. *Pa. Dep't of Envtl. Prot. v. Cromwell Twp.*, 32 A.3d 639, 642 n.2 (Pa. 2011).

[7] Once a private request is filed with DEP, the municipality involved has 45 days in which to submit written comments. *Id.* § 750.5(b.1). The statute requires DEP to issue a written decision on the request within 120 days after receiving the municipality's comments or after expiration of the 45-day comment period, if no comments are submitted, and a property owner may initiate a mandamus action if DEP fails to act within the specified time limits. *Id.* § 750.5(b.2); *Heck v. Penn Lake Park Borough*, 786 A.2d 336, 340-41 (Pa. Commw. Ct. 2001) (noting "Section 5.5(b) of Act 537 even provides for the award of counsel fees and court costs in the event that applicants are compelled to initiate a mandamus action against the Department for failure to act within specified time limits").

2008) (citing 35 Pa. Stat. Ann. § 750.16); *Del. Riverkeeper v. Dep't of Envtl. Prot.*, 879 A.2d 351, 354 (Pa. Commw. Ct. 2005) (noting EHB conducts a de novo hearing on appeal). The EHB's decision, in turn, is appealable to the Commonwealth Court. *McGrath Constr.*, 952 A.2d at 721 n.1, 728.

These procedures for administrative and judicial review are similar to procedures the Third Circuit has found sufficient to provide constitutionally adequate procedural due process in other cases. *See DeBlasio*, 53 F.3d at 597-98 (holding procedures for challenging adverse zoning decisions, which included the availability of an appeal to a zoning board of adjustment and review in state court, were constitutionally sufficient); *Midnight Sessions, Ltd. v. City of Phila.*, 945 F.2d 667, 681 (3d Cir. 1991) (holding licensing scheme satisfied procedural due process where licensing department's denial of a dance hall license could be appealed to a review board for an evidentiary hearing, where licensing department and review board were required to provide reasons for their decisions, and where review board's decision could be challenged in state court), *abrogated on other grounds by United Artists*, 316 F.3d 392.

Defendants argue the Act 537 procedures outlined above provide an "adequate adjudicatory mechanism[] by which sewage capacity and the availability thereof [can] be requested and acquired." *E.g.*, BTMA's Mem. 13. Fortune concedes the Act 537 procedures were available to it at some point in the development process, noting it attempted this remedy, i.e., "an application under the Pennsylvania Sewage Facilities Act, . . . <u>before</u> the alleged injury occurred, to no avail." Pl.'s Opp'n to BTMA's Mot. to Dismiss 8.[8] However, Fortune argues

---

[8] Although Fortune does not specify what issues it raised in its Act 537 application, it links its pursuit of this remedy to paragraphs 28 and 29 of its Complaint, which concern its application for a private, on-site wastewater treatment plant for Water's Edge, which Bern Township denied. *See id.* (citing Compl. ¶¶ 28-29). At oral argument, Fortune represented it appealed the denial of its application, and BTMA represented Fortune's appeal was ultimately withdrawn without

9

these procedures do not provide a means of challenging BTMA's decisions "not to allocate any of its reserved capacity in LBA's plant for [Fortune]" and "not to seek wastewater treatment capacity from LBA for [Fortune]," in part because there has never been any written decision denying Fortune's request for such capacity. *Id.* at 8-9 (noting Fortune "has simply been stonewalled").

Insofar as Fortune contends it may not use the Act 537 procedures to challenge the denial of its request for capacity from the LBA plant because there has been no written decision on its request, the statute refutes this argument. Under the Act, a property owner may request that DEP order a municipality to revise its official plan if the municipality denies the property owner's written demand to do so "*or fail[s] . . . to reply in either the affirmative or negative within sixty days.*" 35 Pa. Stat. Ann. § 750.5(b) (emphasis added); *see also* 25 Pa. Code § 71.14(a). Defendants' failure to issue a written denial thus cannot prevent Fortune from availing itself of the remedies available under the Act. It is also not apparent why Fortune could not use the Act 537 procedures to require BTMA to allocate some of its reserved capacity in the LBA plant to Fortune, or to request additional capacity from the LBA plant and allocate such additional capacity to Fortune. *See McGrath Constr.*, 952 A.2d at 721-23 (noting developer's use of Act 537 procedures to require township to revise its Act 537 plan to accommodate public sewer service for proposed development, despite the existence of a moratorium on sewer connections

---

prejudice. The docket entries in EHB Case No. 2009-097 reflect that Fortune appealed a June 2009 letter from DEP denying Fortune's "Private Request to Revise Official Plan for the Waters Edge Village" to the EHB in July 2009, and then withdrew the appeal without prejudice almost two years later, in May 2011. *Fortune Dev., L.P. v. Pa. Dep't of Envtl. Prot.*, No. 2009-097 (Pa. Envtl. Hr'g Bd. filed July 9, 2009), http://ehb.courtapps.com/public/document_shower_pub.php?csNameID=3930 (last visited Mar. 12, 2013); *see Clean Harbors, Inc. v. ACSTAR Ins. Co.*, No. 09-5715, 2010 WL 1930579, at *2 n.7 (D.N.J. May 12, 2010) (observing docket entries in a publicly filed civil action are matters of public record that a court may consider in evaluating a motion to dismiss). The reasons for the withdrawal are not apparent from the docket.

within the development area, where developer proposed to re-route sewer line to interceptor lines not affected by moratorium); *Pequea Twp. v. Herr*, 716 A.2d 678, 681, 687-88 (Pa. Commw. Ct. 1998) (recounting developer's use of Act 537 to obtain revision to township's official sewage plan calling for the installation of public sewers for proposed industrial park on the basis that township's plan was inadequate to meet developer's sewage disposal needs in "dispute concern[ing] the use of reserved sewer capacity in [township's] public sewer system"); *cf.* 35 Pa. Stat. Ann. § 691.203(b) (noting DEP's authority to "issue appropriate orders to municipalities where such orders are found to be necessary to assure that there will be adequate sewer systems and treatment facilities to meet present and future needs or otherwise to meet the objectives of [the Clean Streams Law]," including orders requiring municipalities "to negotiate with other municipalities for combined or joint sewer systems or treatment facilities"). Because Act 537 provides a constitutionally adequate procedure by which Fortune may seek a modification of Bern Township's sewage service plan and obtain administrative and judicial review if the Township denies or fails to act on the request, Fortune has not alleged a violation of its procedural due process rights. Count I of the Complaint will therefore be dismissed with prejudice.[9]

---

[9] Defendants also argue Fortune's procedural due process claim is barred by the two-year statute of limitations applicable to § 1983 claims in Pennsylvania because the actions that allegedly resulted in sewer capacity not being made available to Fortune—namely, Bern Township and/or BTMA's denial of Fortune's initial request for capacity from the LBA plant, denial of Fortune's application for a private, on-site wastewater treatment plant, interference with Fortune's efforts to obtain capacity from LBA directly, and notification that 50,000 gallons per day was insufficient for Water's Edge, and LBA's notification that requests for sewer or wastewater treatment capacity from the LBA plant would have to be made through BTMA—all occurred prior to April 30, 2010. Fortune argues its procedural due process claim against BTMA and LBA encompasses these Defendants' refusal to make excess capacity from the LBA plant available to Fortune even after LBA's own engineer confirmed the existence of such capacity in June 2010, including BTMA's demand for an additional $20,000 from Fortune sometime after June 2010 and LBA's failure to respond to Fortune's renewed request for excess capacity in

To establish a § 1983 substantive due process claim, a plaintiff must show government actors deprived him of an interest protected by the substantive due process clause, and that the deprivation shocks the conscience. *Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008). Fortune alleges Bern Township, BTMA, and LBA violated its substantive due process rights by taking arbitrary and conscience-shocking actions intended to stop Fortune's proposed development, including (1) denying Fortune's request for capacity from the LBA plant (Bern Township and BTMA), (2) denying Fortune's application for a private, on-site wastewater treatment plant (Bern Township), (3) delaying implementation of the additional capacity Fortune identified in the LBA plant and offering a portion of the additional capacity to another developer (Bern Township, BTMA, and LBA), and (4) entering into the Future Sale Agreement (Bern Township), all with the intent of stopping the Water's Edge development. Compl. ¶¶ 85-89. All three Defendants argue Fortune's substantive due process claim should be dismissed because Fortune has failed to allege a deprivation of a constitutionally protected property interest. In addition, Defendants suggest—explicitly or implicitly—the claim should be dismissed because the challenged conduct by Defendants does not rise to the level of "conscience shocking." LBA's Mem. 5; *see also* Bern Twp.'s Mem. 13 (arguing Fortune "cannot simply 'dress up' its Complaint as constituting Federal Constitutional violations," citing the *United Artists* "shocks the conscience" standard); BTMA's Mem. 10 (arguing "[r]equesting a cash contribution for equipment and/or engineering work, based on the Authority's 'need' for money for that work, as alleged, does not amount to any actionable conduct on the part of BTMA").

Although the Fourteenth Amendment prohibits deprivations of "life, liberty, or property, without due process of law," U.S. Const. amend. XIV, § 1, the property interests protected by

---

November 2011. Because Fortune's procedural due process claim fails for other reasons, this Court need not resolve this issue.

substantive due process are narrower than the interests protected by procedural due process. *See DeBlasio*, 53 F.3d at 598 ("[N]ot all property interests worthy of procedural due process protection are protected by the concept of substantive due process." (quoting *Reich v. Beharry*, 883 F.3d 239, 244 (3d Cir. 1989))). Only those property interests that are "fundamental" under the United States Constitution are worthy of substantive due process protection. *Gikas v. Washington Sch. Dist.*, 328 F.3d 731, 736 (3d Cir. 2003); *see also DeBlasio*, 53 F.3d at 599.

Defendants argue Fortune's substantive due process claim is foreclosed by *Ransom v. Marrazzo*, 848 F.2d 398 (3d Cir. 1988), in which the Third Circuit Court of Appeals held a property owner or occupant's claim of entitlement to water and sewer services, while sufficient to warrant procedural due process protection, is not a property interest entitled to substantive due process protection. In *Ransom*, a class of Philadelphia residents who had been denied water and sewer service unless they paid delinquent service charges incurred, but not paid, by the prior residents of their homes, brought a § 1983 action against various City defendants alleging violations of their due process and equal protection rights. The class included owners as well as occupants of residences who were denied water and sewer services. *Id.* at 401 & n.1. The plaintiffs argued the deprivation of such services on the basis of payment delinquencies incurred by third parties violated their substantive due process rights, but the Third Circuit rejected the claim, holding

> [t]he provision of water and sewer services, whether by a municipality or by a private utility company, is not . . . a federally protected right. The legal fact that, once a municipality (or, for that matter, a private utility company) establishes a utility for its citizens, a citizen's expectation of receiving that service rises to the level of a property interest cognizable under the Due Process Clause merely brings that expectation within the compass of the Fourteenth Amendment's procedural protections . . . . It does not transform that expectation into a substantive guarantee against the state in any circumstance.

*Id.* at 412 (internal citations omitted).

Fortune argues *Ransom* is not controlling because its substantive due process claim is predicated not on its claim of entitlement to wastewater treatment services but on Defendants' interference with its use and enjoyment of its property, an interest that has been held to warrant substantive due process protection in the Third Circuit. Pl.'s Opp'n to BTMA's Mot. to Dismiss 7. In *DeBlasio v. Zoning Board of Adjustment*, the Third Circuit held that "ownership is a property interest worthy of substantive due process protection," and, as a result,

> in the context of land use regulation, that is, in situations where the governmental decision in question impinges upon a landowner's use and enjoyment of property, a landowning plaintiff states a substantive due process claim where he or she alleges that the decision limiting the intended land use was arbitrarily or irrationally reached.

53 F.3d at 600-01.[10] While *DeBlasio* supports Fortune's contention that use and enjoyment of property is an interest protected by substantive due process, this Court is not persuaded Fortune can avoid the holding of *Ransom* simply by reframing its challenge to Defendants' denial of wastewater treatment services in terms of its use and enjoyment of its property.

First, in determining whether the asserted property interest in *DeBlasio* was sufficient to support a substantive due process claim, the Third Circuit surveyed its own prior case law regarding the category of property interests protected by substantive due process, including its decision in *Ransom*. The court noted it had held in *Ransom* "that an entitlement under state law to water and sewer services does not constitute a protectable property interest for purposes of substantive due process," *DeBlasio*, 53 F.3d at 598, but did not question or in any way disturb

---

[10] In *United Artists Theatre Circuit, Inc. v. Township of Warrington*, the Third Circuit held *DeBlasio* and other prior decisions could not be reconciled with the Supreme Court's decision in *County of Sacramento v. Lewis*, 523 U.S. 833 (1998), insofar as the Third Circuit cases held "a municipal land use decision violates substantive due process if it was made for any reason 'unrelated to the merits,' or with an 'improper motive.'" 316 F.3d at 400 (citations omitted). Rather, a land use decision must meet *Lewis*'s more demanding "shocks the conscience" standard to violate substantive due process. *Id.*

this holding.  Significantly, the court did not regard its recognition of property ownership as an interest entitled to substantive due process protection as being in any tension with its prior holding in *Ransom* that entitlement to water and sewer services does not warrant such protection, even though at least some of the plaintiffs in *Ransom* were property owners, whose use and enjoyment of their property was surely impinged upon by the denial of water and sewer services.

Second, *DeBlasio* involved a property owner's substantive due process challenge to municipal zoning decisions finding the plaintiff's property was in violation of a zoning ordinance and denying his request for a use variance.  The land use decisions at issue in *DeBlasio* thus affirmatively prohibited the property owner's desired use of his property.  In contrast, *Ransom* involved a deprivation of water and sewer services.  While the denial of such services undoubtedly impacts a property owner's use and enjoyment of his property, unlike the zoning decisions at issue in *DeBlasio*, it does not directly prohibit the property's use.

Here, Fortune's substantive due process claim primarily challenges Defendants' denial of or interference with its request for wastewater treatment services from LBA or RAWA.  Under *Ransom*, Fortune's interest in such services is not a property interest protected by substantive due process.  *See Warren v. New Castle Cnty.*, No. 07-725, 2008 WL 2566947, at *17-18 (D. Del. June 26, 2008) (rejecting developer's argument that it had sufficiently alleged a substantive due process claim for deprivation of its right to own, use, enjoy, and develop property where "[t]he only alleged interference with [the developer's] property rights [was] the County's denial of access to public sewer").[11]  Fortune's substantive due process claim must be dismissed for this reason.[12]

---

[11] Insofar as Fortune's substantive due process claim challenges Bern Township's denial of its application for a private, on-site wastewater treatment plant for Water's Edge, this aspect of Fortune's claim may arguably be subject to a different analysis, since it involves a denial not of

wastewater treatment services but of Fortune's requested use of its property. It is clear from the Complaint, however, that the Township denied Fortune's application no later than 2009. *See* Compl. ¶¶ 28-30 (alleging Fortune hired an expert to evaluate the LBA Plant's capacity in 2008-2009, *after* Bern Township had denied Fortune's application for an on-site treatment plant); *see also* Pl.'s Opp'n to Bern Township's Mot. to Dismiss 3 (arguing the Township's "pre-injury" conduct from 2006-2009 "is relevant to show [the Township's] motives"). As a result, any claim based on the denial of the application is barred by the applicable two-year statute of limitations.

[12] The Court also notes it is doubtful whether Fortune's allegations rise to the level of conscience-shocking, as required to sustain a substantive due process claim. "The 'shocks the conscience' standard encompasses 'only the most egregious official conduct.'" *United Artists*, 316 F.3d at 400 (quoting *Lewis*, 523 U.S. at 846). Merely alleging government actors had "an improper motive is insufficient, even where the motive is unrelated to the merits of the underlying decision." *Chainey*, 523 F.3d at 220. In *Eichenlaub v. Township of Indiana*, 385 F.3d 274 (3d Cir. 2004), the Third Circuit rejected a substantive due process claim by property owners whose efforts to develop their lands had been thwarted by Township officials. The court held plaintiffs' allegations that zoning officials had "applied subdivision requirements to their property that were not applied to other parcels," "pursued unannounced and unnecessary inspection and enforcement actions," "delayed certain permits and approvals," "improperly increased tax assessments," and "maligned and muzzled the [plaintiffs]" did not rise to the level of conscience-shocking, absent allegations of corruption or self-dealing, or allegations that zoning officials were seeking to hamper development "in order to interfere with otherwise constitutionally protected activity at the project site, or because of some bias against an ethnic group." *Id.* at 286.

Fortune's allegations regarding Defendants' denial of capacity from LBA, delays in implementing the additional capacity identified by Fortune, and consideration of another developer's request for a portion of such additional capacity are in line with the allegations found to be less than conscience shocking in *Eichenlaub*. Although Fortune alleges Defendants were opposed to Water's Edge, there is no allegation such opposition was based on any constitutionally protected activity or characteristic, nor is there any allegation of self-dealing by Defendants in connection with their handling of Fortune's requests for capacity from the LBA plant. *See Locust Valley Golf Club, Inc. v. Upper Saucon Twp.*, 391 F. App'x 195, 199 (3d Cir. 2010) (holding even if zoning official who had twice attempted to purchase a golf course was motivated to deny a proposal to develop the golf course "out of spite or in the remote hope that he might one day purchase the property himself," such "'improper motives' were not so egregious as to shock the conscience"); *see also Clark v. Boscher*, 514 F.3d 107, 110, 113 (1st Cir. 2008) (holding allegations property owners were denied necessary permits to develop a residential subdivision on their land, including the allegation owners' request for municipal water service was denied because the City did not want their project, did not "rise to the level of behavior that shocks the conscience"). Fortune's allegation that even after LBA's own engineer confirmed the existence of excess capacity in the LBA plant, BTMA requested an additional $40,000 ($20,000 each from Fortune and Forino) for "equipment and/or engineering work" also does not rise to the level of conscience-shocking. *See DB Enter. Developers & Builders, Inc. v. Micozzie*, 394 F. App'x 916, 919-20 (3d Cir. 2010) (holding defendant's threats to shut down work on a residential development unless the developer performed offsite sewer construction

For the reasons set forth above, Fortune's procedural and substantive due process claims against Bern Township, BTMA, and LBA (Counts One and Three) will be dismissed with prejudice. Having dismissed Fortune's federal claims, this Court will decline to exercise supplemental jurisdiction over its remaining state-law claims. *See* 28 U.S.C. § 1367(c)(3) (providing a district court may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction"). Therefore, Counts Four and Five of the Complaint will be dismissed without prejudice.

An appropriate order follows.

---

work on public roadways were not conscience-shocking and therefore could not support a substantive due process claim).

Fortune's allegation that Bern Township entered into a sham transaction to purchase the Greenway Association's property in order to prevent Fortune from obtaining water and wastewater treatment services from RAWA presents a closer question. However, the premise of this argument—that the Township entered into the Future Sale Agreement to thwart RAWA's condemnation of a water and sewer easement by asserting its ownership of the Greenway's property, "thereby putting [the property] out of reach of RAWA's eminent domain authority," Fortune's Opp'n to Bern Twp.'s Mot. to Dismiss 3; *see also* Compl. ¶ 69—is undermined by the fact the Township has not asserted the property subject to the Future Sale Agreement cannot be taken by eminent domain because it is municipally owned.

Fortune argues this case is like *Associates in Obstetrics & Gynecology v. Upper Merion Township*, 270 F. Supp. 2d 633, 655-56 (E.D. Pa. 2003), in which the court held an abortion services provider stated a substantive due process claim based on allegations the Township had enforced a zoning code provision against it solely because it was an abortion provider. Fortune contends that, like the defendants in the *Associates* case, Bern Township, BTMA, and LBA have acted with discriminatory animus, denying Fortune's request for wastewater treatment capacity because they do not want the Water's Edge development. As the Third Circuit recognized in distinguishing the *Associates* case from the facts presented in *Eichenlaub*, however,

> [b]ecause the municipal action [in *Associates*] implicated abortion rights, the District Court's analysis of the "shocks the conscience" standard proceeded largely under those judicial decisions that address protection of abortion services under the Fourteenth Amendment. That analysis is inapplicable to a zoning controversy that does not involve allegations of hostility to constitutionally-protected activity on the premises.

385 F.3d at 285. Because this case also involves no "allegations of hostility to constitutionally-protected activity on the premises," *id.*, the *Associates* case is likewise inapposite here.

17

BY THE COURT:


   /s/ Juan R. Sánchez
Juan R. Sánchez